USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  3/31/26_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                       :

**RAUL DE LA CRUZ,** :

                       :

              **Plaintiff,** :

                       :

          **-against-** :        **1:24-cv-02289 (ALC)**

                       :

**CITY OF NEW YORK ET AL,** :        **OPINION AND ORDER**

                       :

           **Defendants.** :

                       :

-------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Raul de la Cruz brings this action pursuant to the Civil Rights Act of 1871 (42

U.S.C. § 1983), the Americans with Disabilities Act (42 U.S.C. § 12132 *et seq.*) ("ADA"), Section

504 of the Rehabilitation Act (29 U.S.C. § 794) ("Section 504"), Title VI of the Civil Rights Act

of 1962 (42 U.S.C. § 2000d *et* seq.) ("Title VI"), the Fourth and Fourteenth Amendments of the

United States Constitution, the New York State Constitution, New York Common Law, the New

York Human Rights Law (N.Y. Exec. Law § 290 *et* seq.), and the New York City Human Rights

Law (N.Y.C. Admin. Code § 8-101 *et* seq.). Before the Court is a motion to dismiss for failure to

state a claim filed by Defendants. For the reasons stated below, the Defendants' motion to dismiss

is **GRANTED.**

## BACKGROUND

### I.      Factual History

Plaintiff Raul de la Cruz is 44-year-old Latino man. *See* SAC ¶ 29. Spanish is his primary

language, and he has limited English proficiency. *See id.* ¶ 32. Plaintiff received a diagnosis of

schizophrenia in 2018. *See id.* ¶ 32. In that same year, Plaintiff stopped regularly taking his

medication for schizophrenia, resulting in a mental health decline. *See id.* ¶ 37.

On the morning of March 26, 2023, Plaintiff was at his family's home, and his father Santo de la Cruz became concerned about his son's mental state, believing him to be experiencing a mental health crisis. *See id.* ¶¶ 40, 43. Plaintiff's father called 311, the City of New York's non-police helpline, to get assistance for his son. *See id.* ¶ 45. A Spanish-speaking interpreter was provided on the line. *See id.* ¶ 46. Plaintiff's father informed the operator that Plaintiff was feeling threatened and had been posting videos on social media expressing concerns about threats and persecution. *See id.* ¶ 48. Plaintiff's father informed the operator that Plaintiff was carrying a knife. *See id.* ¶ 49.

When the 311 operated offered to send help for Plaintiff, his father responded in the affirmative. *See id.* ¶ 51. When Plaintiff joined the call, the 311 operator initiated a transfer to 911 and brought a 911 operator on the line. *See id.* ¶ 54. Through the Spanish interpreter, the 911 operator asked Plaintiff if he wanted to police, but his response was non-responsive. *See id.* ¶ 54.

Internal records show that the call placed by Plaintiff's father was designated as an "EDPC" ("Emotionally Disturbed Person" call). *See id.* ¶ 56. The 911 operator also noted to dispatch that "EDP has weapon," was "carrying a knife," and was "violent." *See id.* ¶ 57. NYPD Officers Bernard and Trupia arrived at the Santo de la Cruz residence while Plaintiff's father was still on the phone with the 911 operator. *See id.* ¶ 62. Plaintiff's father approached the officers to explain the situation, but they indicated they did not speak Spanish. *See id.* ¶ 63. While Officers Bernard and Trupia were speaking with Plaintiff's father, Plaintiff emerged from the front door of the building. *See id.* ¶¶ 64-65.  The officers began shouting at Plaintiff, and he took out the knife and held it in front of himself. *See id.* ¶¶ 66-67. Moments later, Officers Bernard and Trupia opened fire on Plaintiff "who immediately fell to the ground, bleeding profusely and losing consciousness." *See id.* ¶ 71. Plaintiff alleges either officer or both continued to shoot after

he fell to the ground. *See id.* ¶ 74. Plaintiff suffered "multiple, severe wounds to [his] chest, abdomen, and leg," nearly killing him. *See id.* ¶ 75.

Officer Elyjah Bennet arrived on the scene after Officers Bernard and Trupia. *See id.* ¶ 78. Although the 911 operator dispatched an ambulance along with the police, the EMTs did not arrive until after Plaintiff was shot. *See id.* ¶ 77. After Plaintiff was shot, Officer Bennet handcuffed Plaintiff while he lay unconscious on the ground. *See id.* ¶ 79. Plaintiff was transported to St. Barnabas Hospital still cuffed, and the handcuffs were not removed until hours later. *See id.* ¶¶ 82-83.

## II.    Procedural History

On March 26, 2024, Plaintiff filed his complaint initiating this action. *See* ECF No. 1. On April 9, 2024, Plaintiff filed a First Amended Complaint. *See* ECF No. 21. On November 25, 2024, Plaintiff filed a letter motion for a pre-motion conference regarding a motion for leave to further amend the operative complaint to add a new defendant. *See* ECF No. 43. On December 4, 2024, the Court denied Plaintiff's request for a pre-motion conference and granted Plaintiff leave to move to amend the First Amended Complaint. *See* ECF No. 44. On December 20, 2024, Plaintiff filed an unopposed motion for leave to amend the complaint to add a new defendant. *See* ECF Nos. 45, 46. On January 30, 2025, the Court granted Plaintiff's motion to amend the First Amended Complaint. *See* ECF No. 47. On January 31, 2025, Plaintiff filed a Second Amended Complaint. *See* ECF No. 48 ("Second Amended Complaint" or "SAC").

On February 20, 2025, Defendants filed a letter motion for a pre-motion conference in anticipation of a motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* ECF No. 62. On Marcy 7, 2025, Plaintiff filed a letter response to Defendants' request. *See* ECF No. 65. On March 21, 2025, the Court denied Defendants' request

for a pre-motion conference and granted Defendants leave to file their motion to dismiss. *See* ECF No. 66. On April 25, 2025, Defendants filed their motion to dismiss for lack of jurisdiction as to the injunctive and declaratory claims and for failure to state a claim as to the remaining claims, along with the accompanying affidavit and memorandum of law. *See* ECF Nos. 71-73. On June 6, 2025, Plaintiff filed his response in opposition to Defendants' motion to dismiss. *See* ECF No. 80. On July 3, 2025, Defendants filed their reply memorandum of law in support. *See* ECF No. 85. The Court considers this motion fully briefed.

## STANDARD OF REVIEW

### I.    Federal Rule of Civil Procedure 12(b)(1)

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). "[B]ut jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

### II.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

In addition to the factual allegations in the complaint, the Court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Phillips v. City of New York*, No. 21-CV-08149 (ALC), 2024 WL 4307923, at *2 (S.D.N.Y. Sept. 26, 2024). Even if not incorporated by reference, a document "'upon which [the complaint' solely relied and which is integral to the complaint' may be considered by the court."

*Id.* (quoting *Cortec Inductries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). "To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to the complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) (alterations and citation omitted). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Courts in this district have emphasized "that extraneous videos documenting the events in question are not properly considered on a motion to dismiss unless the plaintiff relied upon the videos when drafting the complaint." *Ashley v. Gonzalez,* No. 19-CV-6282 (AJN), 2020 WL 7027501, at *2 (S.D.N.Y. Nov. 30, 2020) (refusing to consider surveillance videos as there was no basis to conclude the videos were incorporated, integral, or essential to the complaint).[1]

**DISCUSSION**

Defendants move to dismiss all claims in Plaintiff's Second Amended Complaint. *See* ECF No. 73. The Court addresses each argument as follows.

I.    **Disability Discrimination Claims in Counts I-III, VIII, and IX.**

---

[1] The Court may not consider the videos at this juncture. Defendants do not argue the videos are incorporated into the SAC. Rather, Defendants argue Plaintiff relied on the videos in drafting the SAC, making them integral to the SAC. However, the fact that Plaintiff possessed portions of the video prior to drafting the SAC is not enough on its own to make the videos integral to the SAC. Other than stating in a conclusory fashion that Plaintiff relied on the videos in drafting the SAC, Defendants do not provide any additional basis for the Court to conclude that is the case here. ECF No. 73 at 10-11. Defendants cite to *Barkai v. Mendez* for the finding that "when specific interactions give rise to claims, recordings thereof are often deemed integral to the complaint." 629 F. Supp. 3d 166, 176. However, the cases cited to in support of this all include situations in which video or audio recordings were included as attachments to the complaint. That is not the case here.

6

Plaintiff alleges the City discriminates against individuals with mental disabilities through its emergency response program in violation of Title II of the ADA, § 504 of the Rehabilitation Act, the NYSHRL, and the NYCHRL. The Court first considers the ADA and Rehabilitation Act claims together. *See Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016). The Court then evaluates the NYSHRL claims similarly. *See Williams v. City of New York*, 121 F. Supp. 3d 354, headnote 4 (S.D.N.Y. 2015) (NYSHRL construed coextensively with ADA). The Court lastly separately evaluates the NYCHRL claims under the more liberal standard. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

### a.  ADA and Rehabilitation Act Claims[2]

Both Title II of the ADA and § 504 of the Rehabilitation Act "protect the rights of disabled individuals to participate in state-administered or funded services." *Davis v. Shah*, 821 F.3d at 259. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Because the standards under both Title II and § 504 are "generally equivalent", claims under both statutes are treated identically in most cases. *See David v. Shah*, 821 F.3d at 259. Thus, to state a case under either provision, a plaintiff must allege that "'she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability.'" *Felix v. City of New York*, 344 F. Supp. 3d 644, 663 (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)). "A plaintiff may base her discrimination

---

[2] Plaintiff appears to also base his discrimination claim on a disparate treatment theory, arguing the City's deliberate indifference to people experiencing mental health emergencies constitutes disparate treatment. ECF No. 80 at 16. This argument fails for reasons discussed in Section IV(b) on deliberate indifference.

7

claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Davis v. Shah*, 821 F.3d at 260.

"[T]he Court of Appeals has repeatedly held that a plaintiff may not challenge the adequacy of services provided exclusively to the disabled under either the ADA or the Rehabilitation Act." *Greene v. City of New York*, 725 F. Supp. 3d 400, 424 (S.D.N.Y. 2024). Indeed, "the purpose of the disability discrimination statutes is 'to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied.'" *Id.* (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). In *Greene*, the plaintiffs' claim was that "the service the City provides-- § 9.41, as implemented by the EDP and Involuntary Removal Policy—is inadequate because it is carried out by police and not mental health workers." *Id.* at 425. Judge Preska found that such claims were not cognizable under the ADA or Rehabilitation Act, stating "Plaintiffs cannot claim they were denied a service, because the program they challenge provides a service—transport to a hospital for mental health care—exclusively to the mentally disabled." *Id.*

Here, Plaintiff makes substantially similar claims. Plaintiff's principal contention is that the City violates the disability discrimination statutes because the City's emergency response services for mental health calls fail "to routinely provide appropriate, non-police responses, such as a mobile crisis team or other qualified health professionals, and/or a co-response." SAC at ¶ 184. Just as in *Greene*, "Plaintiff['s] claim is one that challenges the adequacy of services rather than the denial of services provided to non-disabled individuals." *Greene v. City of New York*, 725 F. Supp. 3d at 425. For the same reasons stated in *Greene*, disability discrimination statutes do not require the City to provide a non-police mental health crisis response program. *See id.* at 426 ("Courts in this Circuit are clear that the ADA and Rehabilitation Act cognize no such claim.").

Plaintiff's reasonable accommodation theory similarly fails in that Plaintiff alleges "Defendants have failed to accommodate Plaintiff by failing to provide him with a qualified health professional or other health-focused co-response services." SAC at ¶ 187. However, Plaintiff also alleges he "should have been provided with reasonable accommodations such as a zone of safety, response with non-threatening body language, a calm tone, and active listening, and de-escalation or assistance from a health professional or any other person capable of communicating effectively with Mr. de la Cruz." ECF No. 80 at 26. Defendants argue in response that exigent circumstances precluded any reasonable accommodation when Plaintiff brandished a knife at the officers upon their arrival to the emergency response. *See* ECF No. 73 at 7-8.

The Second Circuit has not expressly addressed the issue of whether Title II applies officers conducting arrests or "on-the-scene encounters." *See Reyes v. Town of Thomaston*, No. 3:18-CV-831 (JBA), 2020 WL 5849529, at *3 (D. Conn. Sept. 30, 2020). However, "five circuits have concluded that Title II applies to arrests and examines the threatening or exigent nature of the circumstances as part of the reasonableness of the officer's accommodation." *See id*. Courts in this district have recognized an obligation on police officers to reasonably accommodate an individual's disability during the course of an on-the-scene response. *See id*. (citing *Williams v. City of New York*, 121 F. Supp. 3d 354, 368 S.D.N.Y. 2015). That being said, exigent circumstances of police activity may be a consideration in the reasonableness of the officers' accommodation. Considering here that officers were confronted with an erratic, uncooperative individual brandishing a knife, the circumstances were threatening enough such that officers were not presented with the opportunity to provide reasonable accommodations such as "a zone of safety, response with non-threatening body language, a clam tone and active listening." *See* ECF No. 80 at 26. Plaintiff fails to allege sufficient facts establishing such accommodations were

reasonable under the exigent circumstances presented.

### b. NYSHRL Claim

Protections afforded by the NYSHRL are construed coextensively with the ADA. *See Williams v. City of New York*, 121 F. Supp. 3d 354, headnote 4 (S.D.N.Y. 2015). As such, Plaintiff's NYSHRL claim fails for the same reasons stated above regarding the ADA and Rehabilitation Act claims.

### c. NYCHRL Claim

"Courts have repeatedly emphasized that the NYCHRL is to be construed as liberally as reasonably possible in favor of [plaintiffs] to the end that discrimination should not play a role in decisions." *Bravo v. De Blasio*, 75 Misc.3d 373, 167 N.Y.S.3d 708, 718 (N.Y. Sup. Ct. 2022). "Under NYCHRL, it is unlawful for any owner of a place or provider of public accommodation to deny an individual full and equal enjoyment, on equal terms and conditions, of accommodations or services based on an individual's disability." *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 262-63 (S.D.N.Y. 2018). "Although broad, the NYCHRL is limited by the lawmaking authority of the City." *Greene v. City of New York*, 725 F. Supp. 3d at 427. As in *Greene*, there is no violation of the NYCHRL here because "state law expressly permits the use of police in responding to mental health crises." *Id*. New York Mental Hygiene Law § 9.41 provides that police are authorized to "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." *Id*. The policies challenged by Plaintiff in his disability discrimination claims implement this state law. *See id*; *see also* SAC at ¶ 8 ("Plaintiff seeks an injunction to prohibit the Defendant City of New York from continuing to enforce its current police-run mental health crisis response policy."). As the challenged policy is legal under city and state law, Plaintiff's NYCHRL claim fails.

In sum, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's disability discrimination claims under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL.

II.    **Whether Mr. de la Cruz Adequately Pleads National Origin Discrimination Claims in Counts IV, VIII, and IX under Title VI, the NYSHRL, and the NYCHRL**

Plaintiff alleges national origin discrimination under Title VI, the NYSHRL, and the NYCHRL. Plaintiff alleges Defendants discriminated against him based on national origin when they failed to provide him with an interpretation service despite knowing of his Limited English Proficiency ("LEP") status.

"The Supreme Court has held that Title VI creates a private right of action to sue for intentional discrimination." *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 632 (S.D.N.Y. 2021), *aff'd*, No. 21-1642, 2022 WL 710896 (2d Cir. Mar. 10, 2022) (citing *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)). "In order to establish a Title VI violation, a plaintiff must show, through specific factual allegations, that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action." *Id*. (internal quotation and citation omitted). Plaintiff claims that "[b]y alleging that he has limited English proficiency and is of foreign national origin, Mr. de la Cruz has plainly pleaded facts from which the inference could be drawn that Defendants discriminated against him on the basis of his national origin." ECF No. 80 at 20. This is not so. Plaintiff alleges that he spoke Spanish to a 911 operator and that the first responding NYPD officers were non-Spanish speaking. Even construing the facts in the light most favorable to Plaintiff, this is not sufficient to establish intentional discrimination or that discrimination was a motivating factor here. Indeed, Plaintiff alleges facts that cut against this argument. Plaintiff

11

acknowledges that his father, Santo de la Cruz, was provided with a Spanish-speaking interpreter by the 311 operator. *See* SAC at ¶ 46. Plaintiff also established that NYPD has a program to "take reasonable steps to provide LEP . . . with timely and meaningful access to the services and benefits that the Department provides to the degree practicable." *See* SAC at ¶ 230. Even under the broad, independent construction of the NYSHRL and NYCHRL, *see supra* Sect. I, Plaintiff's claim for national origin discrimination fails. As such, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's national origin discrimination claims in Counts IV, VIII, and IX.

### III.    Excessive Force and Assault and Battery Claims in Counts V and X

The Court first considers whether Plaintiff establishes the excessive force and assault and battery claims. The Court then considers whether qualified immunity applies in any event.

#### a.    Excessive Force Claim in Count V

To allege excessive force, a plaintiff must show that an officer's actions were "objectively unreasonable in light of the facts and circumstances confronting [him], and without regard to [his] underlying intent or motivation." *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation marks omitted). In determining whether the amount of force applied to plaintiff was unreasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, the 911 operates noted to dispatch that Plaintiff had a weapon, was carrying a knife, and was violent. *See* SAC at ¶ 57. When NYPD Officers Bernard and Trupia arrived at the scene, Plaintiff emerged from the front door of his building and upon seeing the officers, pulled out a knife and held it in front of himself. These facts fail to establish that Officers Bernard and Trupia's

12

actions were objectively unreasonable. The officers were expecting someone described as violent and carrying a knife, and upon arriving at the scene, this individual presented himself to the officers and pulled out said knife. Under these circumstances, it was not objectively unreasonable for the officers to feel that Plaintiff posed a threat to their safety in a way that required them to respond with force. *See, Kisela v. Hughes*, 584 U.S. 100, 103 (2018) ("Where the police have probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."). As such, Plaintiff fails to state a claim for excessive force against Officers Bernard and Trupia.

The excessive force claim against Officer Bennet for handcuffing similarly fails. "[T]here is consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Johnson v. City of N.Y.*, No. 18-CV-5623 (ALC), 2020 U.S. Dist. LEXIS 102870, at *8-9, 2020 WL 3100197 (S.D.N.Y. June 11, 2020). "A plaintiff must establish that the deprivation alleged is sufficiently serious, or harmful enough, to reach constitutional dimensions[,]" and "a de minimis use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal citations and quotations omitted). Plaintiff argues that any argument regarding de minimis injury should be rejected as Plaintiff "was on the brink of death when handcuffed and his medical treatment was potentially delayed and compromised as a result." ECF No. 80 at 24. However, Plaintiff alleges that Officers Bernard and Trupia shot him before the EMTs even arrived, and that Plaintiff was handcuffed right after being shot. SAC at ¶¶ 77-79. As such, Plaintiff's argument that his medical treatment was delayed as a result of the handcuffing is unpersuasive given the EMTs were not yet present to provide medical treatment. Plaintiff also alleges that Officers Bernard, Trupia, and Bennet are not health professionals. *See id.* at ¶ 81. This fact also undermines any

argument that the officers could have provided medical treatment that was delayed by the handcuffing. As such, Plaintiff fails to establish that Officer Bennet's handcuffing of Plaintiff was an excessive use of force.

### b.  Assault and Battery Claim in Count X

In New York an assault is defined as "an intentional placing of another person in fear of imminent harmful or offensive contact[,]" and battery is defined as "an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001). "As against law enforcement personnel, assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest." *Tianshu Li v. United States*, No. 05-CV-6237 (NRB), 2009 WL 3321014, at \*1 n.2 (S.D.N.Y. Oct. 8, 2009). Whether dismissal of this claim is proper turns on the same question of whether the officers' use of force was objectively unreasonable under the circumstances. As such, Plaintiff's claim similarly fails here for the same reasons discussed above.

### c.  Qualified Immunity Applies

In any event, Defendants are entitled to qualified immunity. Qualified immunity "shields police officers acting in their official capacity from suits for damages ... unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). A plaintiff seeking to defeat a qualified immunity defense must "plead[ ] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 745 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Reichle v.* Howards, 566 U.S. 658, 664

14

(2012) (quoting *Ashcroft v. al-*Kidd, 563 U.S. 731 (2011)). Under New York law, "as is true of federal law, an officer's entitlement to qualified immunity ... depends on the reasonableness of his actions. The only difference between the federal and state doctrines is that, under state law, the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution." *Bancroft v. City of Mount Vernon*, 672 F.Supp.2d 391, 401 (S.D.N.Y. 2009). "New York law 'grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis.'" *Gerasimou v. Gillis*, 15-CV-6892 (EK), 2022 U.S. Dist. LEXIS 6211, at *12, n.7 (E.D.N.Y. Jan 12, 2022) (quoting *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006).

"The objective reasonableness test is met if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The Supreme Court has made it clear that an officer's actions are not to be assessed with 20/20 hindsight." *See id.* (internal citation omitted). Indeed, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Kielsa v. Hughes*, 584 U.S. 100, 102 (2018). As such, "'qualified immunity serves to protect police form liability and suit when they are required to make on-the-spot judgements in tense circumstances.'" *Salim v. Proulx*, 93 F.3d at 91 (quoting *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995)). "The standard is a 'forgiving' one." *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010).

Further, police officers faced with "an imminent threat of death or serious bodily harm," may resort to deadly force. *See James Biggs v. City of New York*, No. 08-CV-8123 (PGG), 2010 WL 4628360, at *5 (S.D.N.Y. Nov. 16, 2010) (finding that the plaintiff posed an imminent threat by pointing and waiving a knife in close proximity to the officer, making it objectively reasonable

for the officer to employ deadly force); *see also Kisela v. Hughes*, 584 U.S. at 105 (qualified immunity afforded to officers who were confronted with a woman acting erratically with a knife who refused to acknowledge two commands to drop the knife and moved within a few feet of another individual).

NYPD Officers Bernard and Trupia arrived at the scene expecting someone described as violent and carrying a knife. Upon arrival, Plaintiff exited the apartment and upon seeing the officers, pulled out a knife. Based on the circumstances presented here, officers of reasonable competence could disagree on the legality of Defendants' actions.

As for the assault and battery claims, Plaintiff also has not alleged sufficient facts establishing the officers' actions were in bad faith. Accordingly, the Court finds that qualified immunity applies here.

### IV.    *Monell* **Claims in Counts V and VI**

A plaintiff seeking municipality liability under 42 U.S.C. § 1983 must show: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." *Aquino v. City of N.Y.*, 16-CV-1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8, 2017 WL 384354 (S.D.N.Y. Jan. 25, 2017). Monell "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). A plaintiff "must simply allege facts that allow the Court to draw the inference that the constitutional violation was the result of a municipal policy of inaction, as opposed to 'isolated misconduct by a single actor.'" *Selvon v. The City of New York*, No. 13-CV-6626, 2015 WL 4728144, at *3 (E.D.N.Y. Aug. 10, 2015) (quoting *Amnesty Am. V. Town of Hartford*, 361 F.3d 113, 130 (2d Cir. 2004)). Plaintiff alleges a "widespread *de facto* policy of

16

providing police rather than a health response to mental health crises, as well as a deliberate indifference to the rights and needs of people with mental disabilities instead engaging in excessive force, a constitutional violation." ECF No. 80 at 26-27. Both theories of liability fail. The Court first addresses the *de facto* policy before turning to the deliberate indifference claim.

### a. *De Facto* Policy

First, Plaintiff challenges the *de facto* policy "of unequally and discriminatorily treating individuals experiencing mental health crises who seek the City's assistance, and using excessive force against individuals whom the City identifies as 'EDP's.'" SAC at ¶ 243. To the extent that this *de facto* policy is essentially a challenge of formal policy, that *Monell* claim fails. Plaintiff argues this *de facto* policy includes "failing to send qualified health professionals and instead sending only police who are not trained health professionals." SAC at ¶ 243. However, this practice is an implementation of a formal policy. New York Mental Hygiene Law § 9.41 allows the police to "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others."  It is well-settled that § 9.41 is constitutional, and policies that implement a constitutional state law cannot form the basis of a *Monell* claim. *Greene v. City of New York*, 725 F.Supp.3d at 429.

This aside, Plaintiff alleges a "*de facto* policy of refusing to provide a health response to mental health crises and instead engaging in excessive use of force." ECF No. 80 at 29. "To plead a *de facto* policy 'the plaintiff must establish a longstanding practice or custom which constitutes standard operating procedure.'" *Greene v. City of New York*, 725 F.Supp.3d at 430 (quoting *Gleeson v. Cnty. Of Nassau*, No. 15-CVV-648, 2019 WL 4754326, at *15 (E.D.N.Y. Sept. 30, 2019)). "The relevant practice must be so widespread as to have the force of law." *Id*. (internal quotations and citations omitted). Here, Plaintiff points to seven reports, fifteen news articles

documenting the use of excessive force against people with mental disabilities, and a number of complaints.

In totality, these allegations do not indicate a custom of engaging in excessive force in response to mental health crises. First, Plaintiff cites to seven reports, "including the OIG-NYPD Report, the DOJ-HHS Guidance, as well as reports from the N.Y.S. Office of the Attorney General, the Office of Public Advocate, the Office of the Bronx District Attorney, and the Crisis Intervention Training International." These reports do not sufficiently support Plaintiff's claim. As a whole, these reports are insufficient for largely the same reasons outlined by Judge Preska in *Greene*. Reliance on research reports must be "sufficiently connected to the specific facts of the case." *Greene v. City of New York*, 725 F.Supp.3d at 430. While these reports do generally support Plaintiff's argument that a law enforcement response to mental health crises often escalates the issue, they are not specific enough to the facts of this case to support Plaintiff's argument that there is a custom of responding with excessive force. *See, e.g., id*. (adopting the reasoning that "the Report's discussion of 'incidents of brute and excessive force towards individuals with mental illness' was scant, that the Report found 'such incidents as few in number, and the NYPD's response to the overwhelming majority as occurring without leading to a discharge of weapons or serious injury.'").

Plaintiff's reference to numerous incidents of police violence towards individuals experiencing mental health crises are similarly unavailing. Plaintiff points to twelve instances of excessive force that resulted in near-death experiences over a nine-year period from 2015 to 2024. SAC at ¶122. Plaintiff also cites to a news article stating twenty people have been killed by police since 2015 while experiencing a mental health crisis. SAC at ¶123. Plaintiff alleges that in 2019, "the City received approximately 180,000 mental health calls." SAC at ¶145. Even if all 32

18

instances cited to by Plaintiff occurred in a single year, "they would represent only a fraction of a percentage of all EDP calls responded to by NYPD annually." *Greene v. City of New York*, 725 F.Supp.3d at 430. Further, reliance on similar incidents must also result in an adjudication of liability, and Plaintiff fails to "allege that any of the incidents resulted in findings of liability against the City." *See id.* Given that the number of alleged incidents of excessive force is comparatively small and that Plaintiff has failed to point to any incidents that resulted in liability, Plaintiff has failed to establish a *de facto* policy. This *Monell* claim is hereby **dismissed**.

### b. Deliberate Indifference

As to the deliberate indifference theory, a municipality is liable when its "failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This is a stringent standard. *See id*. In order to adequately plead deliberate indifference, a plaintiff must establish that the City "had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious, and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." *Greene v City of New York*, 725 F.Supp.3d at 431 (quoting *Amnesty Am. V. Town of W. Hartford*, 361 F.3d at 128). Plaintiff's deliberate indifference theory fails for the same reasons discussed for the *de facto* policy. The comparatively small number of incidents, none of which resulted in liability, "is not sufficient to put the City on notice that its policies caused constitutional violations." *Id*. Plaintiff's argument that the City was on notice as it acknowledged that health-led responses would result in better outcomes yet continued to send police officers to mental health crises is

19

unavailing. This is not sufficient to establish the City was on notice of potential constitutional violations. As such, Plaintiff's deliberate indifference theory fails and is hereby **dismissed**.

In sum, Plaintiff has failed to adequately plead the existence of a municipal policy or custom under either a *de facto* policy or deliberate indifference theory. In any event, Plaintiff also fails to establish a constitutional violation for the reasons discussed *supra* in Section I. As such, Defendants' motion to dismiss Plaintiff's *Monell* claims in Counts V and VI is **GRANTED.**

### V.    Claim for Constitutional Violations against the City Officials in Count VI

Under the same cause of action alleging *Monell* violations, Plaintiff also argues the City Officials directly and proximately caused his injury. SAC at ¶ 242. Although Count VI is alleged specifically against the City of New York, the Court will also address any potential claim being brought against the City Officials in their individual capacities. Defendants argue that the City Officials lack any personal involvement in the alleged constitutional violations, requiring dismissal of claims against Adams, Sewell, and Caban. *See* ECF No. 73 at 13. In order to state a claim against the City Officials under Section 1983, Plaintiff "must allege specific facts to demonstrate that each [City Official] was personally involved in the alleged constitutional violations." *Greene v. City of New York*, 773 F.Supp.3d 94, 112, 2025 U.S. Dist. LEXIS 58927, *37 (S.D.N.Y. March 28, 2025) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Plaintiff relies on *Stone v. Annucci* to argue personal involvement can be established where the individual defendant "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Stone v. Annuccci*, 2021 U.S. Dist. LEXIS 186195, *28 (S.D.N.Y. Sept. 28, 2021). Even if this were so, Plaintiff fails to establish that such a policy or custom exists for the reasons addressed *Supra* in Section IV. As

such, Plaintiff fails to establish personal involvement by the City Officials in any alleged

constitutional violations, and all claims against Adams, Sewell, and Caban are hereby **dismissed**.

## VI.     Whether Mr. de la Cruz has Standing for Injunctive and Declaratory Relief

To satisfy the jurisdictional requirement of standing, "(1) the plaintiff must have suffered

an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at

issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v.

Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted). For

injunctive relief, a plaintiff must show "'both (1) a likelihood of future farm and (2) the existence

of an official policy or its equivalent.'" *Id*. at 228-229 (quoting *Shain v. Ellison*, 356 F.3d at

216). "Declaratory judgment, like an injunction, is a form of prospective relief that requires a

plaintiff to show 'a sufficient likelihood that he [or she] will again be wronged in a similar

way.'" *Id.* at 231 (quoting *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012)). "A

plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy [standing's]

injury requirement but must show a likelihood that he or she will be injured in the future." *Id*. at

232 (internal quotation and citation omitted). "A plaintiff therefore must show 'an official policy

or its equivalent.'" *Id*. (quoting *Shain v. Ellison*, 356 F.3d at 216). Thus, "the issue of whether

[Plaintiff] has adequately alleged an official policy or its equivalent is dispositive with respect to

Plaintiff's claims for both declaratory and injunctive relief." *An v. City of New York*, 230 F.

Supp. 3d at 232. Because the Second Amended Complaint fails to sufficiently allege the

existence of an official policy or its equivalent for the reasons stated above, *see Supra* Section

IV, Plaintiff does not have standing to assert a claim for injunctive or declaratory relief. As such,

Defendants' motion to dismiss for lack of subject matter jurisdiction as to the injunctive and

declaratory relief claims is **GRANTED.**

### VII.    The Court Declines to Exercise Supplemental Jurisdiction of Remaining State Law Claims

The Court takes no position on whether Plaintiff sufficiently states the remaining state law claims which include the negligence claim in Count XI, the negligent infliction of emotional distress claim in Count XII, the denial of medical care claim in Count XIII, the state constitutional claim in Count VII, and the respondeat superior claim in Count XIV. The Court only considers whether to exercise supplemental jurisdiction over such claims. Pursuant to Title 28, United States Code Section 1367, "district courts decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Second Circuit has made clear that "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Ferrari v. Cuomo*, No. 23-CV-7715 (KPF), 2025 WL 965131, at *16 (S.D.N.Y. Mar. 31, 2025) (quoting *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Strs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)). Indeed, such is the case here. Accordingly, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

### VIII.    Leave to Amend

The Court considers whether to grant Plaintiff leave to amend his complaint. Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice

so requires." Fed. R. Civ. P. 15(a)(2); s*ee also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). That said, it remains "within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Leave may be denied where a plaintiff does not request to amend his pleading. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (observing that "no court can be said to have erred in failing to grant a request that was not made"); *see also Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 34 (2d Cir. 2019) (summary order) (holding that "the district court did not abuse its discretion in declining to *sua sponte* allow [plaintiff] leave to file an amended complaint").

Although Plaintiff has failed to "identif[y] any amendments that would alter the Court's analysis," he has requested leave to amend, and it is plausible that additions to his complaint could allege sufficient facts to state a cause of action. *Bellocchio v. Garland*, 614 F. Supp. 3d 11, 20 (S.D.N.Y. 2022); *see also Glob. Tech Indus. Grp. Inc. v. Wells*, No. 21 CIV. 06891 (ER), 2022 WL 2872298, at *6 (S.D.N.Y. July 21, 2022). Accordingly, the Court grants Plaintiff 30 days to amend his complaint in light of opinion.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED.** Plaintiff is hereby **GRANTED** leave to file another amended complaint by **April 21, 2026**. The Clerk of Court is respectfully directed to terminate the pending motions at ECF No. 71.

**SO ORDERED.**

Dated:     March 31, 2026
        New York, New York

           **ANDREW L. CARTER, JR.**
           **United States District Judge**

23